No. 4.----HENRY H. BROWN, *et al*, plaintiffs in error, *vs.* MATTHEW WRIGHT, defendant.

[1.] The returns of an executor, administrator or guardian, to the Court of Ordinary, of their accounts, under the statute and allowed by that Court, are only *prima facie* evidence in favor of such executor, administrator or guardian, and may be impeached by evidence in another Court—the burden of proof being on the party who seeks to impeach them.

Assumpsit, &c. tried before Judge ALEXANDER, in Talbot Superior Court, March Term, 1848.

This action was brought by Matthew Wright, the defendant in error, against Henry H. Brown, as principal, and Charlton Y. Perry as his security, upon a promisory note, of which, the following is a copy:

"$867.----By the twenty-fifth day of December next, I promise to pay Matthew Wright, administrator of Emelia E. Perry, dec'd, or bearer, eight hundred and sixty-seven dollars, for value received, with the right of receiving the proportion of my part of said estate out of this note.   8th March, 1843.

[Signed]   HENRY H. BROWN,

CHARLTON Y. PERRY."

Upon the trial, the counsel for the plaintiff read the note, with a consent between the parties, by which it was agreed that the execution of the note was proved, and that there were four distributees of the estate of Emelia E. Perry, and that said Brown and Perry were each distributees of said estate.

The plaintiff then introduced an exemplification of the record of the Court of Ordinary, of the county of Stewart, showing his actions and doings as administrator of said Emelia E. Perry, dec'd, which was read to the jury. The plaintiff closed.

The defendants then read to the jury the voucher accompanying the return of said administrator to the Court of Ordinary, made March the 4th, 1844, as specified in said exemplified record, containing, amongst other things, a charge of $675 against his intestate for board, lodging and washing for four years and six months, at $12 50 per month, and offered by interrogatories and witnesses there in Court, to attack the correctness and justness of said voucher, by showing that the said sum of $675 for board, lodging, and washing, was not due and owing by said intestate to said administrator, at the time of her death; and that the sum allowed by the Court of Ordinary, was a fraud on the rights of said defendants, in this, to wit: that said intestate, before and at the time she went to reside with said administrator, was living and boarding with said Brown, one of the defendants, in Talbot county, free of charge, for board, washing and lodging, and with the privilege of continuing so to do, so long as she might wish to do so, and that she desired so to continue; that said Wright then and there invited and persuaded said Emelia E. to remove with her property and money to his residence, in Stewart county, and to reside with him as a companion of his wife, (the sister of said Emelia E.) and agreed with her, that if she would so remove with her property, &c. to his residence, and reside there, as aforesaid, he would board and lodge her, and have her washing done free of charge, so long as she should continue to reside there, and that he would loan out her money, and hire out her negroes, free of charge; and that she complied with her part of said agreement, and resided with said plaintiff in pursuance of and under said agreement, during the time for which said charge of $675 was made. To the introduction of which evidence, the plaintiff, by his counsel, objected, and the objection was sustained by the Court, and the testimony rejected,

on the ground that the return being the judgment of a Court of competent jurisdiction, could not, in this case, be attacked. To which decision and rejection of testimony the counsel for the defendants excepted. Upon this exception, the error is assigned.

WORRILL & HILL, for plaintiffs in error, cited 3 *Gill & Johnson*, 39. 7 *Har. & John.* 134. 1 *Kelly*, 486. 9 *Gill & J.* 324, 10 *do.* 276.

JONES, BENNING & JONES, for defendant.

1. The Inferior Court sitting for ordinary purposes, has exclusive original jurisdiction of "All such matters as relate to estates of deceased persons." And of the *account* to be rendered of such matters by administrators. *Prin.* 910. (*Cons. Ga.*) 239, 240, 245.

2. The "Judgment of a Court of *exclusive* jurisdiction directly upon the point, is conclusive between the same parties, upon the same matter coming" (even) "incidentally in question in another Court for a different purpose. 1 *Ph. Ev.* 340. 1 *Green. Ev.* 528."

3. "Under the term, *parties*, in this connection, the law includes all who were directly interested in the subject matter, and had a right to make defence, or to control the proceedings, and to appeal from the judgment. This right, involves, also, the right to adduce testimony, and to cross-examine witnesses adduced on the other side." 1 *Green Ev.* § 523. *Morgan vs. Thorne*, 9 *Dan.* Hence mainly in suits *in rem* the whole world are parties. 1 *Green. Ev.* § 525. *Cowen & Hall, notes to the Phil. Ev. part* II, 880. 9 *Cranch*, 126, 144.

4. In a proceeding before the Inferior Court sitting for ordinary purposes, for approbating, or passing an administrator's account, the next of kin are so interested, and have such rights, and they are therefore, bound by the judgment so long as they allow it to stand unreversed. *Prince's Dig.* 238. 1 *Green. Ev.* § 550. *Cowens & Hill's notes to Ch. Ev. part* II, 844, 845, 63. *Saxton vs. Chamberlain*, 6 *Pick.* 422. *Jenneson, et al. vs. Hapgood*, 7 *Pick.* 1, 7. *Downing's estate*, 5 *Watts*, 90. *Wunner's appeal*, 1 *Whar.* 96. *Jenkins vs. Robinson*, 4 *Wend.* 436. *Lightfoot vs. Doe, ex dem. heirs of Lewis*, (*affirming Wyman vs. Campbell*,

*heirs,)* 6 *Porter,* 220.    5 *Porter,* 117.    1 *J. Ch. R.* 543.    *Gel-ston vs. Hays,* 3 *Wheat.* 315, *by Story.    Stell, guard. vs. Glass,* 1 *Kelly,* 482, 486.    1 *Ph. E.* 346.

By the Court.—WARNER, J. delivering the opinion.

[1.] The only question made by the record here, is, whether the returns of an administrator, to the Court of Ordinary, of his accounts with the estate, and which have been allowed, by the Court, are only *prima facie* evidence for him, or *conclusive* evidence in his favor.

This question appears to have been viewed differently, in the different States of the Union.    In Maryland, where the question appears to have been well considered, a decree, in the Orphan's Court, settling an account, was held to be *prima facie* only.    *Hackett, adm'r vs.   Glenn.    7 Har. & John,* 23.    *Gist's adm'r vs. Cockey, Ibid,* 134. 139.    By the Act of 1810, executors, administors, and guardians, are required to render a full, and *correct* account of the estate, and the condition of the estate, which they may have in their possession, annually to the Inferior Court, while sitting for Ordinary purposes, on oath, together with the necessary vouchers, relating thereto, and it is made the duty of the Court, after examining *such accounts,* to approbate or reject the same.    *Prince,* 240.    The argument for the defendant in error, is, that the Court of Ordinary, having received and allowed the accounts of the administrator, that judgment is *conclusive,* and the fraudulent character of such accounts, cannot be inquired into, in this collateral manner.    Now, these accounts, are made out by the administrator, himself, and the vouchers procured by him, and submitted to the Court, upon his *ex parte* statement, and it is upon his *ex parte* statement alone, that the Court receives, and allows them to be entered, to his credit.    The testimony offered, was to show, that this account of the administrator, so offered, and allowed by the Court, was *fraudulent.*    Although, when offered to the Court of Ordinary, upon the *ex parte* statement of the administrator, it appeared fair, and just, yet in point of fact, the administrator practised a *fraud,* not only upon the Court, but upon the distributees of the estate ; and now, when their rights are to be prejudiced by it, they propose to establish the fraud, by proving that the account, prepared and pre-

Brown and others *vs.* Wright.

sented to the Court of Ordinary, by the administrator, *apparently* just and correct, had no foundation in fact, and was fraudulently raised by the administrator, after the intestate's death; that in her lifetime, he promised to board her *gratuitously*, if she would remove with her property, to his residence, and would loan out her money, and hire out her negroes, *free of charge*. Assuming the facts offered to be proven, to be true, we have no hesitation in saying, that the administrator cannot protect himself, under the judgment of the Court of Ordinary, allowing an account raised by him, under such circumstances. A judgment, decree, or sentence, may be impeached by proof. First, that such judgment never existed, or was void *ab initi.* Secondly, that it was *fraudulent*, and *covinous.* 1 *Starkie's Ev.* 252. *Borden vs. Fitch*, 15 *John. Rep.* 145. The rule, which has generally been recognised in this State, by our Courts, is, that the returns of an executor, administrator, and guardian, to the Court of Ordinary, and allowed by that Court, are to be considered as *prima facie* evidence only, in favor of such executor, administrator, and guardian ; and that creditors, legatees, distributees, and wards, may impeach such returns, by evidence, in other Courts, the burden of proof, being on the party, who seeks to impeach them. This, we have no doubt, is the safe and correct rule, for it will not do to say, that because an executor, administrator, or guardian, by *false*, and *fraudulent* accounts, supported by his *ex parte* acts, and statements, and thereupon allowed by the Court, shall be held *conclusive in his own favor*. Such a rule would be allowing the party to protect himself, and derive a benefit to himself, from his own *fraudulent* conduct. In Fermere's case, Lord Coke said : "Fraud vitiates all judicial acts, whether ecclesiastical, or temporal." 3 *Coke*, 78.

Let the judgment of the Court below be reversed, and a new trial granted.